807 F.2d 1120
 124 L.R.R.M. (BNA) 2152, 105 Lab.Cas. P 12,116
 Joseph BASKIN,* as administrator of the Estate
of James Baskin, Plaintiff- Appellant, Cross-Appellee,
v.
Paul H. HAWLEY, Marvin B. Morganbesser, Gregory S. Oneglia,
Howard G. Weiss, Dominick Lopreato, Ermin Nobili, Anthony
Barbero, Trustees of the Connecticut Laborers Pension Fund;
the Laborers International Union of North America; the
Connecticut District Council of Laborers, Local 449 of the
Laborers International Union of North America; Louis R.
Mazza, Frank Martinelli, Arnold Vacca, Joseph DeLuca, J.
Cappocci, J. Copeland, A. Catugno, W. Buzzeo, W. Balzavini,
S. DeLuca, S. Mazzola, A. Panichella, Z. Forshaw, Arthur J.
Kelly, James R. Spearman, Arthur C. Coia, Albert Guarino,
Julius Nobili, Dominic J. Russo, Charles R. Scalaro, John L.
Silva, Joseph Vercelli, Ronald Divicino, Harry J. Russo,
Robert R. Blakeslea, the Estate of Edward N. Dew, and the
Estate of Michael R. Balesano, Stright Sewage Disposal
Company, Defendants,
Appeal of LOCAL 449 OF the LABORERS INTERNATIONAL UNION OF
NORTH AMERICA, Defendant-Appellee, Cross-Appellant.
Appeal of STRIGHT SEWAGE DISPOSAL COMPANY, Defendant-Appellee.
 Nos. 1330, 1331, 1378, Dockets 86-7010, -7012, -7014.
 United States Court of Appeals,
Second Circuit.
 Argued May 28, 1986.
Decided Dec. 18, 1986.
 
 Joseph A. Moniz and Daniel L. Fitzmaurice (Day, Berry & Howard, Hartford, Conn., Marilyn Ford, Bridgeport, Conn., on the brief), for plaintiff-appellant, cross-appellee Joseph Baskin, administrator of the estate of James Baskin.
 Peter W. Benner, Hartford, Conn. (Alan E. Lieberman, John C. Cvarch, Shipman & Goodwin, Hartford Conn., on the brief), for defendant-appellee, cross-appellant Local 449 of the Laborers International Union of North America.
 Albert A. Garofalo, Fairfield, Conn., for defendant-appellee Stright Sewage Disposal Company.
 David W. Elbaor, Washington, D.C. (Linda Lipsett, Connerton, Bernstein & Katz, Washington, D.C.), filed a brief for Laborers' International Union of North America, AFL-CIO as amicus-curiae on Behalf of defendant-appellee, cross-appellant.
 Before FEINBERG, Chief Judge, NEWMAN, and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Joseph Baskin, as administrator of the estate of the original plaintiff James Baskin ("Baskin") who died on March 30, 1986, appeals from so much of a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, Judge, as (1) summarily dismissed, on statute-of-limitations grounds, Baskin's claim against defendant Stright Sewage Disposal Company ("Stright") for breach of its obligation to contribute to a union pension fund on Baskin's behalf, and (2) set aside a jury award in favor of Baskin against defendant Local 449 of the Laborers International Union of North America ("Local 449" or "Union") of $650,000 in damages for emotional distress resulting from the Union's breach of its duty to Baskin of fair representation under 29 U.S.C. Sec. 159(b) (1982). Plaintiff contends that the dismissal of Baskin's claim against Stright was error because the statute of limitations had been tolled by fraudulent concealment; he contends that the court should not have set aside the jury's award of damages for emotional distress because Local 449 failed to move for a directed verdict on this claim and because, in any event, the issue was properly submitted to the jury.
 
 
 2
 Local 449 cross-appeals from so much of the judgment as ordered it to pay Baskin $22,784.16, representing lost pension benefits and prejudgment interest, and to pay him $88 per month, commencing June 1, 1985, for the remainder of his life. The Union contends that it was entitled to judgment notwithstanding the verdict ("n.o.v.") principally because the evidence was insufficient as a matter of law to establish that it owed Baskin a duty of fair representation or that the statute of limitations had been tolled by fraudulent concealment.
 
 
 3
 For the reasons below, we affirm so much of the judgment as awarded Baskin $22,784.16 against the Union and ordered it to pay him $88 per month for the remainder of his life; we agree with the district court's decision to set aside the verdict of $650,000 for emotional distress but, concluding that the court should have ordered a new trial on this claim rather than granting the Union judgment n.o.v., we vacate the judgment in favor of the Union and remand for retrial of this claim before a properly instructed jury; and we vacate the judgment dismissing the claim against Stright and remand for trial of that claim.
 
 I. BACKGROUND
 
 4
 The events leading to this lawsuit, summarized briefly from the trial evidence taken in the light most favorable to Baskin, included the following. From at least 1952 to 1973, Baskin, a laborer, was a dues-paying member of Local 449. He worked union jobs continuously from 1949 to 1958, and in the spring of 1958 he was assigned by Local 449 to work with Stright, a septic tank installation and repair contractor. Baskin worked for Stright from 1958 until he retired in December 1970.
 
 
 5
 The collective bargaining agreements negotiated by Local 449 for the period 1958 through 1972 required the contracting employers to, inter alia, make contributions on behalf of each union-member employee to Local 449's Health & Welfare Fund (the "Welfare Fund"). Beginning in 1963, such employers were also contractually required to make contributions to the then-new Connecticut Laborers Pension Fund (the "Pension Fund" or "Fund").
 
 
 6
 In 1971, shortly after he retired, Baskin, assisted by the Union's business agent Joseph DeLuca, applied to the Trustees of the Pension Fund for a pension. After a series of inquiries by the Fund, Stright and Local 449 informed the Fund that Stright had not been a party to a collective bargaining agreement prior to 1968. Baskin was thus denied a pension in May 1972 on two grounds: (1) that his employment with Stright from 1963 through 1967 constituted a disqualifying break in service, and (2) that he had not worked in "covered" employment for the number of years needed to entitle him to a pension.
 
 
 7
 A. The Lawsuit and the Statute-of-Limitations Rulings
 
 
 8
 After several years of trying to obtain his pension through administrative channels, Baskin commenced the present suit in 1980. The initial complaint named the Trustees of the Pension Fund and others not involved in these appeals; Local 449 and Stright were added as defendants in 1981. Baskin alleged that Stright had breached its collective bargaining agreement when, after it became a union employer in 1967, it failed to make required contributions to the Pension Fund. He claimed that the Union had breached its fiduciary duties and its duty of fair representation by sending him to Stright as a nonunion employer for a period of time, 1958 to 1967, which rendered him ineligible for a pension.
 
 
 9
 Throughout the proceedings, Local 449 and Stright maintained that Stright had not been bound to a collective bargaining agreement prior to 1968. In his deposition in April 1982, DeLuca testified in part as follows:
 
 
 10
 Q How would you find out whether the contractor is union or nonunion?
 
 
 11
 A If any contributions are being paid into the funds.
 
 
 12
 Q Would that be welfare funds and pension funds?
 
 
 13
 A Welfare funds, whatever funds--.
 
 
 14
 Consistent with their position that Stright was not party to a contract with Local 449 prior to 1968, Local 449, in sworn answers to interrogatories, stated that Stright had not made any contributions to the Union's Welfare Fund prior to 1968. The Union also stated that its records as to any pre-1968 contributions had been destroyed.
 
 
 15
 In July 1982, Baskin's attorneys discovered documents in the files of the Fund indicating that in fact Stright had made contributions on Baskin's behalf to Local 449's Welfare Fund annually from 1958 to 1970. On the strength of this discovery Baskin promptly moved for and eventually received permission to file another amended complaint (the "Eighth Amended Complaint"). To the extent pertinent to the present appeals, this complaint alleged that Stright had been a union employer covered by a collective bargaining agreement from 1958 to 1970; that Stright had breached its obligation to make pension contributions on Baskin's behalf from 1963, when the Pension Fund for Local 449 members was formed, until 1970, when Baskin retired; and that Local 449 had breached its duty of fair representation by failing to compel Stright to make such contributions. Baskin also alleged that until 1982 Local 449 and Stright had fraudulently concealed from him Stright's payments to the Welfare Fund. Baskin sought, inter alia, an award of his past and future pension benefits in an amount based on his years of service from 1949 through 1970 and computed from the date of his initial pension application, plus $500,000 in damages "against Local 449 to compensate him for the damages, including severe emotional suffering, distress, anxiety and grief inflicted upon him by the acts and omissions of Local 449, such acts and omissions having been intentional and without cause and without regard for the contractual and fiduciary obligations owed to" Baskin.
 
 
 16
 Prior to the filing of the Eighth Amended Complaint, all defendants had moved for summary judgment dismissing the action on the ground, inter alia, that the statute of limitations had run on Baskin's claims. Baskin opposed the motions on the ground that the statute had been tolled by the concealment of material information from him until 1982. The district court granted these motions in part and denied them in part. To the extent pertinent here, the court, which had before it the newly discovered information (which led it to permit the filing of the Eighth Amended Complaint), granted Stright's motion on the ground that Baskin had learned in 1972 that Stright had been bound by a collective bargaining agreement since 1968 and had failed to make contributions to the Pension Fund on Baskin's behalf from 1968 to 1970. The court reasoned from this that the information Baskin claimed was concealed from him did not conceal his "cause of action against Stright." The court denied the summary judgment motions of Local 449 and other defendants, finding that Baskin had come forward with evidence suggesting that Stright had been a union employer prior to 1968, that this information was in the possession of the defendants and was not disclosed to him until 1982, and that he could not have obtained the information through the exercise of reasonable diligence. Thus, the court concluded that there were genuine issues of fact as to whether there was fraudulent concealment of material information from Baskin sufficient to toll the statute of limitations.B. The Trial Evidence and the Motion for Directed Verdict
 
 
 17
 The trial proceeded against Local 449, the Fund, and others in 1985. At the close of the evidence, the claims against all defendants except Local 449 were dismissed. Since Baskin has not appealed from the dismissals of the other defendants, we summarize only the evidence that pertains to the claims against Local 449.
 
 
 18
 Walter Jakubowski, owner of Stright from 1955 to 1982, testified that in 1958, when Stright was working on a large construction project in Stamford, Connecticut, a union delegate had asked two of Stright's workers whether they were union members. Upon learning that they were not, the union delegate "chased" them from the jobsite. To replace one of the banished nonunion workers, Joseph DeLuca, business agent for Local 449 since 1958, sent Baskin to Stright. DeLuca testified that it was Local 449's practice to send its members only to unionized employers, i.e., employers who had signed collective bargaining agreements with Local 449.
 
 
 19
 DeLuca also testified that prior to 1968, employers who were not bound to collective bargaining agreements were permitted to make voluntary contributions to the Welfare Fund. He conceded that if the employer's contributions were not voluntary, the proper conclusion would be that that employer was bound by a contract with Local 449.
 
 
 20
 Baskin introduced documentary evidence that Stright had made contributions to the Local 449 Welfare Fund on behalf of Baskin from 1958 to 1970. The evidence consisted of the periodic remittance forms supplied to Stright by Local 449 and returned by Stright to the Union. Though the Union had served interrogatory answers denying that any such payments had been made by Stright prior to 1968 and representing that all records of any pre-1968 contributions had been destroyed, these forms had been produced from the Union's files pursuant to a trial subpoena. DeLuca testified that he had been aware of Stright's pre-1968 payments at least since 1969, and had attended meetings of the Welfare Fund from 1958 through 1970 at which these contributions were discussed. Indeed, it was DeLuca's responsibility to contact delinquent employers regarding their contributions, and he testified that in 1969 he had become aware of Stright's remittance reports dating back to 1958 while investigating a claim for health benefits filed by Baskin.
 
 
 21
 Both DeLuca and Jakubowski testified that Stright did not sign a collective bargaining agreement until 1968. Jakubowski stated that he had told Baskin that Stright was not a union employer and that it paid less than union scale wages. Though the reason Stright paid less than union scale was that it had a thin profit margin, Jakubowski said that he had made the Welfare Fund contributions for Baskin from 1958 to 1968 because he was a "nice guy." He also testified that Stright simply paid whatever amount the union forms instructed it to pay: "we remitted whatever the Union asked us to do, that's what we did." Indeed, at some point, the Union increased the amount of the employer's contributions by 50%; apparently Stright paid the increased amount without question.
 
 
 22
 Though Jakubowski linked Stright's failures to pay union scale and to make pension contributions prior to 1968 to its not being bound by a union contract, Baskin introduced evidence that Stright had also paid less than union scale wages and had failed to make pension contributions after 1968 when Stright admitted to being bound by a collective bargaining agreement. He also introduced a December 1980 affidavit of Jakubowski which stated, inter alia, that Jakubowski "was never advised by Mr. DeLuca or any other representative of Local 449 or anyone else that [he] was obligated to make payments to the Local 449 Pension Plan on behalf of James Baskin," and that he had "made contributions to the Pension Plan on behalf of [his] other employees for whom [he] was notified that payments should be made."
 
 
 23
 Pension Fund officials testified that if Stright had been identified as a party to a collective bargaining agreement during the 1963-1967 period, Baskin would have been found qualified for a pension. The Pension Fund, however, would have no way of knowing that an employer had an obligation to make contributions unless the Union told the Fund of the employer's obligations. A Fund official stated that if a union, when asked for information in connection with an application, produced records showing that the employer had been making contributions to the union's welfare fund, the Fund would conduct further inquiry. Though the making of such contributions would not necessarily mean that the employer was bound by a collective bargaining agreement, it would technically be unlawful for an employer to make payments to this Welfare Fund if it were not a party to a contract with Local 449; the fact that Stright had been making contributions to the Local 449 Welfare Fund from 1958 to 1970 could have been helpful to the Fund in determining whether Stright was a party to a collective bargaining agreement in 1963-1967.
 
 
 24
 In 1971, after receiving Baskin's application, the Fund asked Local 449 to identify Baskin's employer and to send whatever other pertinent information it had. DeLuca identified Stright as the employer but provided no other information. Thereafter, the Fund requested in writing that Stright furnish copies of its payroll records with regard to Baskin. Stright ignored these requests, and, though copies were sent to Local 449, apparently the Union did nothing to prompt Stright to comply. Eventually, both Local 449 and Stright responded that Stright had not become a party to the collective bargaining agreement until the end of 1967. Neither told the Fund about Stright's contributions from 1958 to 1970 to the Local 449 Welfare Fund.
 
 
 25
 At no time during Baskin's attempts to secure his pension did DeLuca tell Baskin that Stright had been contributing to the Welfare Fund on Baskin's behalf since 1958. Indeed, Baskin, whose trial testimony consisted of his videotaped deposition, testified that in 1969 DeLuca had informed him that he could not receive sick pay because Stright had not been contributing to the Welfare Fund.
 
 
 26
 Baskin also put in evidence Local 449's Constitution, which "charged" Local 449 "with the responsibility ... [t]o conduct its affairs in a manner which would most tend to enhance, conserve and protect the welfare and interest of ... its ... members." DeLuca confirmed that one of Local 449's duties after the Pension Fund's creation in 1963 was to see that employers made the contributions that were due. To enforce an employer's pension obligations, the standard collective bargaining agreements in force during the relevant period gave Local 449 the power to strike, to resort to court action, or to take other action.
 
 
 27
 With respect to his claim for emotional distress, Baskin testified that except for Social Security benefits, the union pension represented his sole means of support, and that its denial had caused him "aggravation," depression, rising blood pressure, and loss of sleep, and that he was in "bad shape." These problems had not, however, led him to consult a psychologist or a physician.
 
 
 28
 At the close of the evidence, Local 449 moved for a directed verdict on a variety of grounds, including: (1) that Baskin had not proven that the statute of limitations was tolled by fraudulent concealment, because there was insufficient evidence of (a) fraud, (b) the exercise by Baskin of reasonable diligence to discover his cause of action, and (c) the signing or acceptance of a collective bargaining agreement by Stright prior to 1968; (2) that Baskin had not proven that the Union's actions were undertaken in bad faith; and (3) that because Baskin was retired at the time of his pension application, the Union owed him no statutory duty of fair representation and hence was not required to reveal to him any evidence that Stright had been a union employer in 1963-1967. The motion was denied and the case was submitted to the jury.
 
 C. The Instructions and the Jury's Verdict
 
 29
 The court instructed the jury that in order to return a verdict in favor of Baskin, it would have to find (1) that Stright was bound by a collective bargaining agreement "for at least four consecutive years during the period from April 1963 through April 1967," (2) that Local 449 breached its duty of fair representation by failing to require Stright to make pension contributions on behalf of Baskin, (3) that Local 449 fraudulently concealed facts relating to Baskin's cause of action and that Baskin could not have learned of the information concealed through the exercise of reasonable diligence, and (4) that the Union's breach of its duty of fair representation caused Baskin to be denied his pension. The court elaborated on each of these components.
 
 
 30
 The court explained that the jury could not find that Stright had been bound by a collective bargaining agreement simply because Stright voluntarily complied with certain of its provisions, if Stright demonstrated an intent not to be bound by the agreement in its entirety. Rather, in order to find that Stright was bound by the agreement, the jury would have to be persuaded that it was more likely than not that Stright either signed the agreement or had adopted or ratified it by demonstrating a clear intent to be bound by it in its entirety.
 
 
 31
 As to a union's duty of fair representation, the court instructed the jury that the duty is breached only if the union acts arbitrarily, discriminatorily, or in bad faith; the duty is not breached by mere negligence or ineptitude. The jury was instructed that, if Stright was bound by an agreement with Local 449, Local 449 had an obligation not to fail arbitrarily, discriminatorily, or in bad faith to require Stright to make pension contributions on behalf of Baskin.
 
 
 32
 In connection with the statute-of-limitations defense and Baskin's fraudulent-concealment argument, the court told the jury that, because of the special relationship between a union and its members, Local 449 had had an obligation to disclose to Baskin information that it knew might give him a claim against the union.
 
 
 33
 Finally, the court instructed the jury on damages. As to the claim of mental anguish, the court stated that
 
 
 34
 [t]he law recognizes mental anguish as an injury properly compensated by a damage award. It is the plaintiff's burden to show that he actually suffered such mental anguish and if you find that the plaintiff has met this burden by the same fair preponderance of the evidence which we previously indicated is the standard of proof, then you may award him damages to compensate for his mental anguish,
 
 
 35
 adding only that the damages awarded should be fair, just, and reasonable.
 
 
 36
 The jury returned a verdict and answers to special interrogatories. It found that Stright became a signatory to collective bargaining agreements in 1963 and 1965 and that Stright also was bound by virtue of its adoption or ratification of such an agreement for each year from 1963 through 1967. It found that Local 449 had breached its duty of fair representation in failing to require Stright to make pension contributions during that period; that this breach caused Baskin to fail to qualify for his pension; that Local 449 had fraudulently concealed facts giving rise to plaintiff's cause of action; and that Baskin could not have discovered the grounds for his cause of action through reasonable diligence. For his mental anguish, the jury awarded Baskin $650,000.
 
 D. The Posttrial Decisions
 
 37
 By agreement of the parties, the amount to be awarded to Baskin for lost pension benefits was calculated by the court, which determined that Baskin was entitled to $22,784.16 in past pension benefits, including prejudgment interest, plus $88 per month, commencing June 1, 1985, for the remainder of his life. Judgment was entered awarding Baskin these sums, plus the $650,000 awarded by the jury for his emotional distress.
 
 
 38
 Local 449 moved for judgment n.o.v. or a new trial on the grounds, inter alia, that there was insufficient evidence to support any of the jury's findings in favor of Baskin. The district court denied the motion insofar as most of the liability issues were concerned, concluding that the evidence on those issues, viewed in the light most favorable to Baskin, was sufficient. The Union also argued that the judgment against it and the order dismissing Stright from the case should be set aside because it was unfair to impose on Local 449 the entire burden of compensating Baskin for his lost pension. The court rejected this argument because Local 449 had not opposed the dismissal of Stright or moved for reconsideration of the dismissal; nor had it objected to the court's instructions to the jury that the Union could be held responsible for the entire amount of damages suffered by Baskin.
 
 
 39
 The court found merit, however, in the Union's contention that the jury's award of $650,000 for emotional distress should be set aside. It held that there was insufficient evidence of outrageous conduct on the part of the Union to allow this claim to go to the jury and that Local 449 was thus entitled to judgment dismissing this claim. The court also found that there was insufficient evidence of distress on the part of Baskin to support a judgment in the amount awarded by the jury. Accordingly, the court ruled that if its judgment n.o.v. dismissing this claim were set aside on appeal, Local 449 would be entitled to a new trial on the amount of such damages unless Baskin agreed to remit $600,000 and consent to a judgment of $50,000.
 
 E. The Issues on Appeal
 
 40
 In this Court, Local 449 contends that the district court erred to the extent that it did not grant the Union judgment n.o.v., arguing principally that (1) there was insufficient evidence to permit the jury to find that Stright became bound to a collective bargaining agreement prior to 1968 either by signing or through adoption or ratification, (2) Local 449 was not required, as part of its duty of fair representation, to enforce Stright's obligation to make pension contributions for Baskin, (3) the evidence was insufficient to establish the tolling of the statute of limitations by fraudulent concealment, and (4) Local 449 cannot be held liable for the total amount of Baskin's damages.
 
 
 41
 Plaintiff's appeals challenge (1) the court's summary dismissal of Baskin's claim against Stright on statute-of-limitations grounds, arguing that fraudulent concealment tolled the statute as to Stright as well as Local 449, and (2) the judgment n.o.v. in favor of Local 449 on the claim for emotional distress, arguing that Local 449 had not moved for a directed verdict as to that claim and that the evidence was sufficient to support both the imposition and the amount of damages.
 
 
 42
 For the reasons below, we reject all of the contentions advanced by Local 449 on its cross-appeal; we find merit in plaintiff's contention that the claim against Stright should not have been summarily dismissed; and we conclude that the court did not err in setting aside the jury's verdict for emotional distress but that it erred in granting judgment n.o.v. instead of ordering a new trial on that claim.
 
 
 43
 II. THE UNION'S LIABILITY FOR BASKIN'S LOST PENSION
 
 A. Local 449's Duty of Fair Representation
 
 44
 1. The Existence of an Agreement with Stright
 
 
 45
 The cornerstone of Baskin's claim that Local 449 breached its duty of fair representation is, of course, the existence of a collective bargaining agreement between the Union and Stright, for without such an agreement, the Union could not have breached its duty to Baskin by failing to compel Stright's performance of contractual obligations. The jury found that Stright had been bound to such an agreement from 1963 through 1967 both as a signatory and by adoption and ratification. Local 449 argues that it was entitled to judgment n.o.v. because, although Moglia v. Geohegan, 403 F.2d 110, 118 (2d Cir.1968), cert. denied, 364 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969), suggests that an employer may be bound to such an agreement either by signing it or by adopting and ratifying it, there was insufficient evidence at trial for the jury to find that either action had occurred. We reject this contention.
 
 
 46
 Judgment n.o.v. is proper "only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor." Sirota v. Solitron Devices, Inc., 673 F.2d 566, 573 (2d Cir.), cert. denied, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). In other words, either there must be "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result or sheer surmise and conjecture" or the evidence must be so overwhelming that reasonable and fair-minded persons could only have reached the opposite result. Newmont Mines Ltd. v. Hanover Insurance Co., 784 F.2d 127, 132 (2d Cir.1986) (quoting Mallis v. Bankers Trust Co., 717 F.2d 683, 688-89 (2d Cir.1983)). Local 449's challenge does not satisfy these standards.
 
 
 47
 The proof included evidence that Stright allowed Local 449 to banish nonunion workers from its 1958 project and dictate their replacement with union workers; that Local 449 placed Baskin, a Union member, with Stright; and that the Union placed its members only with employers who were bound by collective bargaining agreements. There was evidence that Stright promptly began making contributions to the Local 449 Welfare Fund on behalf of Baskin, and made such payments from 1958 through 1970; that such payments would have been unlawful if Stright was not bound by a collective bargaining agreement; and that the Pension Fund would have considered these payments some evidence of Stright's being party to a collective bargaining agreement. Stright's conduct with respect to the payment of below-scale wages and nonpayment of pension contributions was precisely the same after 1968, when Stright and the Union concede Stright was bound by a collective bargaining agreement, as it had been since 1958.
 
 
 48
 Viewed in the light most favorable to Baskin, the evidence also revealed that Stright made payments to Local 449's Welfare Fund and the Pension Fund whenever Local 449 told it to do so and in whatever amounts the Union demanded. It made no payments to the Pension Fund on behalf of Baskin because Local 449 did not tell Stright it was obligated to do so. The jury was plainly entitled to infer that Stright's contributions to the Welfare Fund from 1958 to 1970 had not been voluntary and to accept DeLuca's concession that if an employer's payments were not voluntary they were contractually required. We conclude that the evidence was ample to permit a rational juror to conclude that Stright had been bound by a collective bargaining agreement with Local 449 from 1963 through 1967.
 
 2. The Effect of the Pension Fund's Duty
 
 49
 Local 449's next argument is that it is entitled to a reversal of the judgment against it on the ground that there was insufficient proof of its duty to enforce Stright's obligation to make contributions to the Pension Fund because the Fund had an obligation to see that contributions were made. Although we would agree that a union's duty of fair representation does not extend to overseeing an employer's contributions to a pension fund when the union neither controlled nor was in a position to oversee such contributions, Rosen v. Hotel Restaurant Employees and Bartenders' Union, 637 F.2d 592, 599 n. 10 (3d Cir.), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981), we reject the present argument both because Local 449 apparently did not move for a directed verdict on this basis and because the evidence amply demonstrated that the initial responsibility for enforcing Stright's obligation fell on the Union.
 
 
 50
 Fed.R.Civ.P. 50(b) generally prohibits judgment n.o.v. on any ground not raised in a motion for a directed verdict. See Abehouse v. Ultragraphics, Inc., 754 F.2d 467, 473 (2d Cir.1985); 5A Moore's Federal Practice p 50.08, at 50-74 to 50-75 (2d ed.1986); 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2537, at 598 (1971). Relief from this requirement is only available to prevent a "manifest injustice." Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54-55 (2d Cir.1978).
 
 
 51
 Local 449 does not appear to have included in its motion for a directed verdict any argument that the principal responsibility for enforcing an employer's obligation to make pension contributions fell upon the Pension Fund rather than on Local 449. Thus, its motion for judgment n.o.v. on this ground was properly denied unless there was manifest injustice in allowing the jury's verdict against it to stand. The trial evidence permits no such conclusion of injustice. The proof was that the Pension Fund had no knowledge that Stright was bound to a collective bargaining agreement prior to 1968, and hence had no basis on which to infer that pension contributions were required from Stright. Further, the proof was overwhelming that only Local 449 could monitor an employer's initial compliance with its pension contribution obligation and that both Local 449 and the Pension Fund understood that Local 449 would perform this function. Accordingly, Local 449's motion for judgment n.o.v. premised on the alleged superior duty of the Pension Fund to enforce Stright's obligation to make pension contributions was properly denied.
 
 B. The Issue of Fraudulent Concealment
 
 52
 There is no question that Baskin's cause of action for the loss of his pension accrued in 1972 when the Fund denied his application. Thus, the statute of limitations, be it the six-year Connecticut statute provided by Conn.Stat.Gen. Sec. 52-576 (1985) for contract actions, or the six-month statute that has been applied to claims under 29 U.S.C. Sec. 185(a) (1982) arising out of violations of contracts between an employer and a labor union, see DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 169-72, 103 S.Ct. 2281, 2293-95, 76 L.Ed.2d 476 (1983), would have run prior to the commencement of this suit if its running was not tolled on account of fraudulent concealment. Local 449 makes a number of arguments in support of its contention that the fraudulent concealment argument was not available, including (1) that there was insufficient proof of fraudulent concealment on the part of the Union, (2) that the court erred in concluding that a plaintiff who claims fraudulent concealment has no duty to exercise diligence in learning the facts concealed, (3) that there was insufficient evidence of Baskin's diligence, and (4) that the court erred in instructing the jury that the Union had a duty to disclose. We reject each argument.
 
 
 53
 There was evidence of active concealment. Concealing the actionability of a known injury is sufficient to toll the statute of limitations. See, e.g., Bowen v. City of New York, --- U.S. ----, 106 S.Ct. 2022, 2030, 90 L.Ed.2d 462 (1986) (though plaintiffs knew of loss of benefits, statute of limitations was tolled by defendants' concealment of facts revealing that the loss constituted a violation of rights), aff'g, City of New York v. Heckler, 742 F.2d 729, 738 (2d Cir.1984); Hamilton v. Smith, 773 F.2d 461, 468 (2d Cir.1985) (applying Connecticut law) (plaintiff knew he had cancer but defendant allegedly concealed evidence of earlier misdiagnosis); Barrett v. United States, 689 F.2d 324, 327-28 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80, 87 (2d Cir.) (there is fraudulent concealment when defendant conceals either the transaction sued upon, the defendant's identity, "or the facts rendering a known transaction actionable"), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); Richards v. Mileski, 662 F.2d 65, 69, 70 (D.C.Cir.1981) (despite plaintiff's knowledge of sufficient facts relating to other causes of action, statute of limitations on defamation cause of action was tolled by defendant's fraudulent concealment of their knowledge of falsity of statements about plaintiff).
 
 
 54
 Indisputably, the Union actively concealed from Baskin any hint that Stright was bound to a collective bargaining agreement from 1963 through 1967. DeLuca represented to the Pension Fund that Stright was not so bound; the Fund informed Baskin that this was the reason his pension application was denied. Further, Baskin testified that DeLuca had told him that Stright had not made payments on his behalf to the Welfare Fund, further concealing the employer's contractual obligations. Though DeLuca in effect denied at trial that he had made such a statement, claiming that he had told Baskin that Stright's contributions were too small to benefit Baskin, the assessment of the credibility of the witnesses is a matter wholly within the province of the jury. The jury apparently credited Baskin's evidence, perhaps influenced by the fact that DeLuca had twice falsely stated in pretrial statements under oath that Stright had made no contributions to the Welfare Fund prior to 1968 and had falsely represented that the Union no longer had any records as to pre-1968 contributions. In the end, the jury found that "Local 449 fraudulently conceal[ed] facts giving rise to plaintiff's cause of action," and there is no basis in this record for overturning this finding.
 
 
 55
 We see no merit in the Union's contentions regarding Baskin's diligence. Local 449 argues that the district court erred in relying on this Court's decision in Robertson v. Seidman & Seidman, 609 F.2d 583, 593 (2d Cir.1979), for the proposition that a plaintiff need not establish his diligence in attempting to discover his cause of action if the defendant has engaged in active concealment. Even if Robertson did not stand for this proposition, which we think it does, the Union has shown no basis for reversal, for in fact the jury was instructed that Baskin was required to exercise reasonable diligence, and was asked, "Could Mr. Baskin or his attorneys have discovered the grounds for his cause of action through the exercise of reasonable diligence despite the Union's fraudulent concealment?" The jury answered this question in the negative.
 
 
 56
 Nor was the proof of Baskin's diligence inadequate to support this finding. It is settled that reasonable diligence does not require a person to commence a lawsuit in order to procure court-ordered discovery of concealed facts. See, e.g., Barrett v. United States, 689 F.2d at 330. Given the evidence that Baskin was illiterate, had no access to the concealed records, and relied on DeLuca initially to assist him in applying for a pension, and given the proof of the array of false statements, half-truths, and omissions on the part of the Union, it was more than reasonable for the jury to infer that commencement of the lawsuit was the only step that could have uncovered the information concealed here. We conclude that the evidence was sufficient to support the jury's verdict.
 
 
 57
 Finally, we find no reversible error in the court's instruction to the jury that Local 449, because of the special relationship between a union and its members, had an obligation to disclose to Baskin information that it knew might give him a claim against the Union. The Union argues that reversal is required because a union has no duty of fair representation to its members who are retired. We reject this argument for several reasons.
 
 
 58
 First, though we note that a union's duty of fair representation does not include an obligation to take into account the interests of its retired members when it is negotiating contracts with an employer, see, e.g., Central States, Southeast And Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833, 2843 n. 18, 86 L.Ed.2d 447 (1985); Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 172-75, 92 S.Ct. 383, 393-96, 30 L.Ed.2d 341 (1971), we are aware of no case holding that where a union has, as the jury found here, breached its duty of fair representation to a member while he was an employee and member of the bargaining unit, its duty of honest conduct expires upon the member's retirement and the union can thereupon with impunity engage in half-truths and outright falsehoods to conceal its prior breach. Nor need we reach the question of whether such misrepresentations by a union in these circumstances would give the member a cause of action for lack of fair representation, since the function of the challenged instruction was not to list the elements of any cause of action but solely to inform the jury's consideration of whether there was such fraudulent concealment of the prior breach of the fair-representation duty as to toll the statute of limitations. Thus, with regard to Baskin's claim of a breach of the duty of fair representation, the jury was asked only whether Local 449 breached the duty "in failing to require Stright to pay pension benefits during the years from 1963 through 1967 when Stright was bound by a collective bargaining agreement[.]" We doubt that rulings that a union has no duty of fair representation to retired members while it is negotiating contracts should preclude consideration of a union's concealment when the question is solely whether the union should thereby be equitably estopped from gaining the benefit of the statute of limitations.
 
 
 59
 Finally, even if the court should not have instructed the jury that the Union had a special relationship with Baskin at the time of his pension application, the Union's duty to disclose here did not depend on the assumed special relationship, for if the Union qua union had no duty to disclose anything, it is nonetheless fundamental that a person who speaks has a duty to disclose enough to prevent his words from being misleading. A statement disclosing favorable information but omitting all reference to material unfavorable facts breaches that duty. See Restatement (Second) of Torts Sec. 529 & comments a, b (1977); Prosser and Keeton on the Law of Torts Sec. 106, at 738 (5th ed. 1984). This principle is plainly applicable to the question of whether a defendant has engaged in fraudulent concealment. See United States v. Hardy, 299 F.2d 600, 609 (4th Cir.), cert. denied, 370 U.S. 912, 82 S.Ct. 1259, 8 L.Ed.2d 405 (1962); Hickok Producing & Development Co. v. Texas Co., 128 F.2d 183, 185 (5th Cir.1942).
 
 
 60
 In all the circumstances, given the ample evidence of falsehoods and half-truths by the Union preventing Baskin from perfecting his application for a pension and from learning of the Union's breach of its duty of fair representation, we cannot conclude that the instructions as to fraudulent concealment contained reversible error.
 
 C. The Extent of the Union's Liability
 
 61
 Local 449 contends that the district court should have charged the jury that the Union could be held responsible only for the portion of Baskin's damages that was proportionate to its fault in relation to that of Stright. At trial, Local 449 neither requested such a charge nor objected to its absence.
 
 
 62
 In general, a party may not raise on appeal an asserted error in the giving or failure to give a particular instruction to the jury unless he has made timely objection in the trial court. Fed.R.Civ.P. 51; Air et Chaleur, S.A. v. Janeway, 757 F.2d 489, 493 (2d Cir.1985); Haskell v. Kaman Corp., 743 F.2d 113, 123 (2d Cir.1984); Goodman v. Heublein, Inc., 645 F.2d 127, 131 n. 5 (2d Cir.1981). An exception may be made only when there is plain error that may result in a miscarriage of justice, or in "obvious instances of ... misapplied law." Air et Chaleur, S.A. v. Janeway, 757 F.2d at 494 (quoting City of Newport v. Fact Concerts, 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981)).
 
 
 63
 We find no error, "plain" or otherwise, in the failure to give the apportionment charge, for when a union has caused or participated in the underlying wrong of the employer, it is appropriate to hold it jointly and severally liable for the employee's loss. See Vaca v. Sipes, 386 U.S. 171, 197 n. 18, 87 S.Ct. 903, 920 n. 18, 17 L.Ed.2d 842 (1967); Jones v. Transworld Airlines, Inc., 495 F.2d 790, 798 (2d Cir.1974) (tacit understanding between union and employer led to underlying violation); Farmer v. ARA Services, Inc., 660 F.2d 1096, 1107 (6th Cir.1981); see also Bowen v. United States Postal Service, 459 U.S. 212, 223 n. 11, 103 S.Ct. 588, 595 n. 11, 74 L.Ed.2d 402 (1983). By breaching its duty of fair representation in not contemporaneously requiring Stright to make pension contributions from 1963 to 1967, the Union participated in the underlying wrong.
 
 
 64
 III. THE UNION'S LIABILITY FOR EMOTIONAL DISTRESS
 
 
 65
 The district court set aside the jury's $650,000 award to Baskin for emotional distress because it concluded that there was insufficient evidence of outrageous conduct by the Union to warrant submission of this claim to the jury and insufficient evidence of distress on the part of Baskin to sustain an award of this size. The court thus granted judgment in favor of the Union on this claim notwithstanding the jury's verdict in favor of Baskin, and it ruled that if the judgment n.o.v. were to be reversed on appeal, the claim should be retried unless Baskin consented to a remittitur reducing the award on this claim to $50,000. We agree with the court's decision to vacate the judgment on the emotional distress claim, but we conclude that it should have granted a new trial instead of entering judgment n.o.v. or conditioning a new trial on Baskin's acceptance of the remittitur.
 
 
 66
 A. The Doctrinal Basis for an Award for Emotional Distress
 
 
 67
 The principal basis for the district court's conclusion that the award on this claim must be set aside was that, as a remedy for a breach of the union's duty of fair representation, the union may not be required to pay damages for the infliction of emotional distress unless its conduct has been truly outrageous. This premise was correct. The individual union member's cause of action for breach of the statutory duty of fair representation is a judicially implied cause of action, and in fashioning remedies the courts must take care to balance the employee's interest in "full compensation" against the undesirability of "impair[ing] the financial stability of unions and unsettl[ing] the careful balance of individual and collective interests ... in the unfair representation area." International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42, 48-52, 99 S.Ct. 2121, 2125-28, 60 L.Ed.2d 698 (1979). The court should seek to prevent large damage awards that may be based on a general hostility towards unions. Id. at 50 n. 14, 99 S.Ct. at 2127 n. 14. Thus, the Supreme Court held in Foust that punitive damages may not be awarded, and that only the "usual" damages may be awarded. Id. at 49, 99 S.Ct. at 2126. See also Farmer v. United Brotherhood of Carpenters, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977) (judge in labor case has special responsibility to "assure that the damages awarded are not excessive"); Linn v. United Plant Guard Workers of America, 383 U.S. 53, 65-66, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1966).
 
 
 68
 In delineating the "usual" damages, we note that the general rule in tort law is that, absent physical injury, a plaintiff may recover damages for emotional distress only if the defendant has engaged in "extreme and outrageous conduct intentionally or recklessly caus[ing]" that distress. See Restatement (Second) of Torts, Sec. 46 (1965); see also id. Sec. 436A. This principle has governed the award of damages for emotional distress in fair representation suits. See Bloom v. International Brotherhood of Teamsters Local 468, 752 F.2d 1312, 1314-15 (9th Cir.1984); Soto Segarra v. Sea-Land Service, Inc., 581 F.2d 291, 298-99 (1st Cir.1978) (requiring proof of "extreme" misconduct that is malicious and willful); see also Richardson v. Communication Workers of America, 443 F.2d 974, 983-85 (8th Cir.1971) (damages for emotional distress could be granted when there was "malicious treatment" amounting to intentional discrimination), cert. denied, 414 U.S. 818, 94 S.Ct. 38, 38 L.Ed.2d 50 (1973); cf. Farmer v. United Brotherhood of Carpenters, 430 U.S. at 301-05, 97 S.Ct. at 1064-66 (preemptive effect of National Labor Relations Act allows state law tort suits for emotional distress but only if based on Restatement test).
 
 
 69
 The charge on this issue given by the district court in the present case, see Part I.C. above, did not give the jury any hint that, in order to award Baskin any damages for emotional distress, it must find outrageous conduct on the part of the Union. Nor did the court emphasize that the jury was not allowed to grant punitive damages but only compensation for emotional distress actually proven. The instructions thus were inadequate to satisfy the court's special responsibility to take precautions to forestall an excessive award.
 
 
 70
 Local 449 did not raise either the requirement that outrageous conduct be proven as a predicate for the claim of emotional distress or the question of error in the court's charge until it made its motion for judgment n.o.v. It had neither moved for a directed verdict on the ground that the evidence of outrageous conduct was insufficient nor objected to the court's uninformative instruction on this basis. As discussed in Part II.C. above, an error in the court's charge to the jury may not be raised on appeal unless it was preserved by way of timely objection in the trial court or unless it was plain error that obviously misapplied the law or could result in a miscarriage of justice. The district court noted Local 449's procedural default but concluded that the error was plain and the potential for injustice substantial. In light of the above authorities, we agree, and we conclude that the court appropriately set aside the verdict of the jury on the ground that the jury had received inadequate instruction as to the contours of Baskin's right to recover for emotional distress.
 
 
 71
 As discussed in Part II.A.2. above, however, a motion for judgment n.o.v. under Rule 50(b) may not be granted unless the movant has also moved for a directed verdict, or unless the granting of the motion is required to prevent manifest injustice. While we agree with the district court's conclusion that justice required vacation of the jury's verdict, we disagree that it required that judgment be entered in favor of the Union. Although entry of judgment in favor of the moving party would be appropriate if a new trial could not result in a verdict in favor of the non-moving party, as when, for example, the defendant has immunity from a claim for the type of damages sought, see City of Newport v. Fact Concerts, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (immunity of municipality from claim under 42 U.S.C. Sec. 1983 for punitive damages), there is no contention here that the Union is immune from a claim for emotional distress but only that the evidence was insufficient to support a finding of outrageous conduct. The question of the outrageousness of a defendant's conduct is, of course, one of fact for the jury within the usual limits on sufficiency of the evidence, see Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1274 & n. 9 (3d Cir.1979), and the very purpose of Rule 50(b)'s requiring a prior motion for a directed verdict is to give the other party "an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." 5A Moore's Federal Practice p 50.08, at 50-77 (2d ed. 1986). Thus, if the party moving for judgment n.o.v. has not moved for a directed verdict, and if the court is nevertheless satisfied that justice requires that the judgment be vacated for insufficiency of the evidence, the court should normally grant a new trial. See Russo v. State of New York, 672 F.2d 1014, 1021-22 (2d Cir.1982); Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54-55 (2d Cir.1978); Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 816-17 (2d Cir.1970).
 
 
 72
 We are unprepared to say that as a matter of law there was insufficient evidence from which a properly instructed jury could have found that the conduct of the Union here was outrageous. Nor are we prepared to say, if there was insufficient evidence, that justice required that Baskin not be given the usual opportunity that is available, when a motion for directed verdict is properly made, to supplement his record.
 
 
 73
 Accordingly, we vacate the judgment of the district court insofar as it dismissed Baskin's claim against Local 449 for damages for emotional distress.
 
 B. The Amount of the Award
 
 74
 We also agree with the district court's conclusion that, in light of the proof offered by Baskin of his emotional suffering, the jury's award of $650,000 was excessive. In the circumstances here, however, conditioning the granting of a new trial on Baskin's agreement to a remittitur was not the proper remedy, for in this case the jury was not properly instructed as to what type of conduct on the part of the defendant could justify any award for emotional distress. Baskin should not have been given the option to determine whether or not Local 449 would have a trial before a properly instructed jury. See Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 50 (2d Cir.1984); 6A Moore's Federal Practice p 59.08, at 59-199 (2d ed. 1986).
 
 
 75
 Accordingly, we vacate the decision denying Local 449 a new trial in the event of a remittitur by Baskin. Since the instructions to the jury on other issues were clear and related precisely to the issues in question, and since the jury was given interrogatories that reveal its findings on the discrete questions of fact before it, the new trial should be limited to the issues of whether the Union's conduct warranted any damages for emotional distress and, if so, the amount of those damages. See Martell v. Boardwalk Enterprises, Inc., 748 F.2d 740, 756 (2d Cir.1984).
 
 IV. THE DISMISSAL OF STRIGHT
 
 76
 Finally, we turn to plaintiff's challenge to the district court's summary dismissal of the claim against Stright for lost pension benefits. We note that our treatment of this contention may be superfluous since we affirm the judgment against Local 449 insofar as it awarded damages for lost pension rights, and plaintiff would not be allowed a double recovery. Nonetheless, since we conclude that the dismissal of Stright was erroneous, and the record does not reflect that plaintiff has actually collected this part of its judgment from the Union, we address the dismissal of Stright.
 
 
 77
 The district court granted summary judgment dismissing Stright on statute-of-limitations grounds on the assumption that Baskin knew of his claim against Stright in 1972 when his pension application was denied. The court's premise was that since there was no question that Stright had been obligated to make pension contributions at least as early as 1968 and Baskin learned in 1972 that such contributions had not been made, Baskin then knew or should have known of his cause of action against Stright. This premise misperceived the basis for the Pension Fund's rejection of Baskin's application.
 
 
 78
 Under the terms of the pension plan, a member of Local 449 was entitled to receive a pension if, upon reaching the pertinent retirement age, he had 15 years of service with a union employer and no disqualifying break in service. The Fund, having been advised by Local 449 that Stright was not a union employer prior to 1968, concluded that Baskin was not entitled to credit for union employment from 1963, when the Pension Fund was established, through 1967. Thus, it calculated that he had only some 14 1/2 years of covered employment (1952-1962 plus 1968-1970), and that he had a break in service from 1963 through 1967, and it denied the pension application on the ground that Baskin simply did not meet the pension plan's requirements. This decision did not depend on Stright's failure to make contributions after 1967, for if a union member meets the pension plan's requirements, he is entitled to the pension whether or not the employer has fulfilled its obligation to contribute. Rather, the rejection of the application resulted from the failure of Stright and the Union to acknowledge the existence of Stright's contractual obligation to make contributions in the period 1963 through 1967. That obligation was obscured by Stright's failure to contribute and the Union's failure to require it to contribute.
 
 
 79
 Had the Pension Fund known in 1971-1972 that Stright was contractually bound to Local 449 during the period 1963 through 1967, it would have been required to grant Baskin's pension application, for Baskin would have been credited with some 18 years of covered employment, and there would have been no break in service. Thus, Baskin's discovery that Stright had made no pension contributions in his behalf after 1968 was irrelevant to his cause of action, for the making of post-1968 payments would neither have increased the amount of covered employment with which he was credited nor eliminated his perceived break in service.
 
 
 80
 The Pension Fund sought repeatedly to obtain from Stright its payroll records with regard to Baskin for 1963 through 1967. Stright resisted until threatened with an audit, and steadfastly maintained that it was not a union employer prior to 1968. Even when Stright provided information, it apparently failed to reveal to the Fund that it had made contributions on Baskin's behalf to the Local 449 Welfare Fund from 1958 to 1970, a fact that could have led Fund officials to disbelieve the assertion that Stright was not a union employer prior to 1968.
 
 
 81
 Since there were genuine issues of fact as to whether and to what extent Stright concealed from Baskin Stright's status as a union employer prior to 1968, summary judgment dismissing the complaint against Stright on statute-of-limitations grounds was error. Plaintiff is entitled, if he wishes, to a trial on the claim against Stright.
 
 CONCLUSION
 
 82
 For the above reasons, we affirm so much of the judgment as required Local 449 to pay Baskin damages for his lost pension and to pay him pension benefits for the remainder of his life; we vacate so much of the judgment as dismissed Baskin's claim against Stright for loss of pension benefits and his claim against Local 449 for emotional distress and we remand those claims for further proceedings not inconsistent with this opinion. Costs to plaintiff.
 
 
 
 *
 Pursuant to Fed.R.App. 43(a), Joseph Baskin, as administrator of the estate of James Baskin, has been substituted as plaintiff-appellant-cross-appellee