In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3551

David Pals,

Plaintiff-Appellee,

v.

Schepel Buick & GMC Truck, Inc.,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:97-CV-246-AR--Andrew P. Rodovich, Magistrate Judge.

Argued May 16, 2000--Decided July 14, 2000

Before Easterbrook, Ripple, and Rovner, Circuit
Judges.

Easterbrook, Circuit Judge.  Afflicted with
muscular dystrophy, David Pals worked for 26
years as the used car manager of Schepel Buick.
Pals appraised cars offered for trade-in, decided
whether to resell used cars to other dealers or
at retail, arranged for the cars to be cleaned up
and repaired, managed inventory and personnel,
and handled related matters. All of these he was
able to do despite decreasing mobility as the
years passed. During the early 1990s Pals began
to delegate some inspection functions to
Schepel's cleanup and repair personnel. Instead
of test-driving cars and sometimes crawling under
(or over) them to assess their condition, Pals
had other employees perform these tasks, making
appraisals on the basis of their reports. In July
1996 Pals had an accident at home that curtailed
circulation to his left leg for several hours and
left him unable to walk. When Pals sought to
return to work in February 1997, Schepel
declined, telling him that his limitations
precluded doing the used car manager's job. In
this suit under Title I of the Americans with
Disabilities Act, 42 U.S.C. sec.sec. 12111-17, a
jury disagreed with Schepel's assessment and
awarded Pals $1,050,000 in damages.

Schepel contends that the evidence did not
permit a rational jury to find for Pals, but

because we must view all inferences in the light most favorable to the verdict this position is untenable. For example, Schepel contends that Pals cannot perform all essential functions of the job and therefore is not a "qualified individual with a disability" under the ADA. 42 U.S.C. sec.sec. 12111(8), 12112(a). The only function he can't handle, however, is inspecting cars personally. A rational jury could conclude that this is not an essential, or even an important, aspect of the used car manager's position, given that Pals had delegated this task for years before the accident. Schepel has not suggested that appraisals were less accurate as a result or that it cost the firm even a penny extra for other employees to devote some of their time to this endeavor. Perhaps relieving Pals of the inspection duty counts as an accommodation under the ADA, but if so it was no less available as an accommodation after Pals became wheelchair-bound than before his accident.

Appealing to the principle that the ADA does not require an employer to displace another person already in a position, see Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996), Schepel contends that it had no vacancy for Pals to fill early in 1997. But the jury could have determined that Wayne Wiarda, who performed Pals's functions during his absence, had not taken over the job but was instead filling in just as he had done for years during Pals's vacations and illnesses. Nor does Pals's request to return initially on a part-time basis disqualify him under the ADA. Employees who have experienced serious medical problems often return to work part-time and increase their hours until they are working full time. This is what Pals proposed to do. If (as the jury could have found) Wiarda was available to fill in for whatever hours Pals did not cover at the outset, gradual return to full-time work would have been a reasonable accommodation that the ADA required Schepel to provide. 42 U.S.C. sec.sec. 12111(9)(B), 12112(b)(5).

That Pals filed applications for benefits under Schepel's disability plan likewise does not foreclose recovery. See Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999). Pals was indeed disabled for the second half of 1996 and early in 1997, but during these months he underwent physical therapy to regain mobility. By February 1997 he could get out of his wheelchair (though with difficulty) and drive his car to the dealership. His physical therapist testified that Pals could perform the required tasks. Schepel responds that even as late as February, however, when filling out an application for long-term disability benefits,

Pals answered "all of them" to the question what tasks he was unable to perform. Cleveland holds that an employee making claims under the ADA must give a satisfactory explanation for such inconsistency. One possible explanation might have been that Pals completed this form two days after meeting with Schepel's managers and learning that he would not be welcomed back. If his employer treated him as permanently disabled, then he was entitled to collect on his employer's disability-benefits program. But this is not the explanation Pals gave at trial, where he testified that he had misread the form and thought that he was being asked what tasks he was able to perform. That strikes us as weak-- insurance law holds applicants to their answers and does not permit lame excuses for falsehoods, and if Pals thought he was able to perform all tasks why was he applying for benefits?--but not so weak that a jury was obliged to disbelieve it for purposes of a claim under the ADA, which (Cleveland holds) does not treat general assertions of disability as conclusive against applicants. None of Schepel's claims of trial error is persuasive, so the jury's verdict on liability stands.

Damages are another matter, considerably more difficult. Pals contended that he suffered three kinds of harm: lost back wages, lost future income, and mental distress. Pals himself supplied most information and computations; Schepel neither cross-examined him on these subjects nor presented evidence (or calculations) of its own. Pals sought approximately $350,000 for past financial loss, $1,700,000 for future financial loss, and an unspecified amount for noneconomic loss. A magistrate judge, presiding by consent under 28 U.S.C. sec.636(c), gave the jury a general-verdict form telling it to determine the amount of "compensatory damages" to which Pals was entitled. After the verdict fixed these at $1,050,000, Schepel asked the court to reduce the award to $100,000 under 42 U.S.C. sec.1981a(b)(3)(B). This statute, part of the Civil Rights Act of 1991, applies to ADA cases, see sec.1981a(a)(2). Section 1981a(b)(3) reads:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party . . . (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000[.]

Schepel, which has more than 100 and fewer than 201 employees, believes that its exposure cannot exceed $100,000. After all, the verdict form and the instructions called the award "compensatory damages."

Yet sec.1981a(b)(3) does not set a limit on "compensatory damages" as that term may be used colloquially, or even "compensatory damages" as lawyers normally employ that term. The cap limits "the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" (emphasis added). Are back and front pay in an ADA action awarded under sec.1981a? Section 1981a(b)(2) tells us that "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964", 42 U.S.C. 2000e-5(g). So back pay falls outside the cap. Section 706(g)(1) does not mention front pay, but it does permit a court to order "reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate." Front pay is in lieu of reinstatement, and as a substitute for a remedy under sec.706(g)(1) "front pay falls squarely within the statutory language authorizing 'any other equitable relief [as the court deems appropriate].'" Williams v. Pharmacia, Inc., 137 F.3d 944, 952 (7th Cir. 1998). We did not consider in Williams the effect of this conclusion on sec.1981a; all Williams holds is that sec.706(g)(1) authorizes front pay as an equitable remedy. Section 1981a(b)(2) gives this another effect, however, and we now put two and two together. Neither back nor front pay counts against a maximum award of compensatory damages under sec.1981a(b)(3). Accord, EEOC v. W&O, Inc., 2000 U.S. App. Lexis 11935 at *40-43 & n.10 (11th Cir. May 30, 2000); Gotthardt v. National R.R. Passenger Corp., 191 F.3d 1148, 1153-54 (9th Cir. 1999); Martini v. Federal National Mortgage Ass'n, 178 F.3d 1336, 1348-49 (D.C. Cir. 1999); Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 556 (10th Cir. 1999); Kramer v. Logan County School District, 157 F.3d 620, 626 (8th Cir. 1998).

One court has gone the other way. Hudson v. Reno, 130 F.3d 1193, 1202-03 (6th Cir. 1997), criticized but followed by Pollard v. E.I. DuPont de Nemours Co., 2000 U.S. App. Lexis 11750 at *29-31 (6th Cir. May 26, 2000). Hudson reasoned that unless front pay were charged against the cap, the words "future pecuniary losses" would be empty. What kind of "future pecuniary losses" other than front pay might be covered by

sec.1981a(b)(3)?, the court wondered. One answer is future medical expenses (often for mental-health matters), a kind of financial loss that comes up now and again in civil rights actions. See, e.g., Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1293 (7th Cir. 1987). The maxim that statutes should be read to give meaning to every phrase does not mean that they should be read to make every phrase important; many a provision covers unusual circumstances. Section 1981a(b), read in conjunction with sec.706(g)(1) to exclude front pay from the cap, has plenty of work still to do, and every word can be given some effect.

Because the jury did not separate compensatory damages under sec.1981a from other monetary relief, it is impossible to know whether the verdict includes more than $100,000 in "compensatory damages awarded under this section". Like the magistrate judge, we think that Schepel has only itself to blame. Pals's lawyer and the magistrate judge obviously had not focused on sec.1981a(b)(3). Schepel's lawyer sat quietly as the jury instructions and verdict forms were approved and did nothing to avert the problem. (Schepel does not contend on appeal that its trial lawyer was clueless about sec.1981a until after the verdict.) When lawyers fail to draw the court's attention to a preventable problem, they must bear the consequences of forfeiture. At oral argument Schepel's lawyer protested that there was no problem to prevent, no error requiring objection. All this shows, however, is that Schepel's lawyer does not understand the nature of the difficulty: the difference between a generic reference to "compensatory damages" and the more limited scope of sec.1981a(b)(3), which affects only "compensatory damages awarded under this section". Having stood silent when it was possible to frame questions so that the jury could reveal which of the damages had been awarded under sec.1981a, Schepel has forfeited any benefit of sec.1981a(b)(3)(B).

Before affirming on the basis of this forfeiture, however, we must consider the possibility that even with the parties' acquiescence a jury may not determine the amounts of back and front pay. Section 1981a(c) provides: "If a complaining party seeks compensatory or punitive damages under this section--(1) any party may demand a trial by jury; and (2) the court shall not inform the jury of the limitations described in subsection (b)(3) of this section." Pals demanded and was entitled to a jury trial--but on what issues? The parties and the magistrate judge assumed (without giving the matter detailed attention) that the answer is

"every issue," but that can't be right. "The issue, not the action, is the basic unit for determining jury-triability . . . and the rules contemplate that in the one action some issues will be tried to the court and others will be tried to the jury." Charles Alan Wright & Arthur R. Miller, 9 Federal Practice and Procedure sec.2331 (2d ed. 1994). Suppose Pals and Schepel disagreed about whether reinstatement was superior to front pay. Choosing between reinstatement and front pay and, if the latter, the amount of front pay, would have been subjects for the judge under sec.706(g)(1). Likewise, one supposes, with other equitable remedies: juries don't draft injunctions. Back pay and front pay are equitable remedies under sec.706(g)(1) and therefore matters for the judge even after sec.1981a(c), as the only published appellate decisions on point conclude. EEOC v. W&O, supra at *43; Allison v. Citgo Petroleum Corp., 151 F.3d 402, 423 n.19 (5th Cir. 1998). When assessing back pay, or awarding front pay in lieu of reinstatement, the judge must respect the findings implied by the jury's verdict. See Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959); Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 458-59 (7th Cir. 1996); McKnight v. General Motors Corp., 908 F.2d 104, 113 (7th Cir. 1990). But whatever discretion the facts allow with respect to back pay and front pay belongs to the judge rather than the jury.

To say that sec.1981a(c) does not entitle either side to a jury trial on back or front pay does not mean, however, that a jury trial is forbidden even if the parties are content.

In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Fed. R. Civ. P. 39(c). Thus an issue may be tried to the jury "with the consent of both parties" even if the issue is "not triable of right by a jury". Front pay and back pay under Title VII and the ADA are "equitable" matters, but they still are dollar values; allowing a jury to liquidate these sums is a far cry from allowing a jury to draft an injunction. After all, "back pay" under the ADA is very similar to "lost wages" in a tort or contract suit under state law, and "front pay" is like lost future income. Juries routinely determine lost wages and discount future income

loss to present value. If hundreds of juries render verdicts on these subjects every day across the country, they can't be beyond the scope of consent under Rule 39(c). E.g., Place v. Abbott Laboratories, No. 99-2418 (7th Cir. June 1, 2000), slip op. 5 (recounting that in a case under sec.1981a the jury had awarded back pay while the judge denied front pay).

Well, then, did these parties consent to have the jury decide both back pay and front pay? Not in so many terms, but neither did either party object--and Schepel's answer to Pals's complaint does "demand trial by jury as to all issues herein" (emphasis added). "If one party demands a jury, the other parties do not object, and the court orders trial to a jury, this will be regarded as jury trial by consent" under Rule 39(c). Wright & Miller at sec.2333. See Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 795 n.101 (5th Cir. 1999). For purposes such as this, implied consent is as good as express consent--for pleadings may be amended by implied consent, see Fed. R. Civ. P. 15(b), which means that when both sides are content to have an issue decided by the jury, the pleadings are deemed amended to give permission.

Schepel did not introduce any evidence to undercut Pals's estimates of his financial loss and therefore is in no position to contest the million-dollar award, apart from its reliance on sec.1981a(b)(3). Because that contention has been forfeited, and because mutual implied consent supports the jury's authority to resolve issues that normally would be decided by the court, the judgment is

affirmed.