# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2816

CHRISTOPHER M. OPSTEEN,

*Plaintiff-Appellant,*

v.

KELLER STRUCTURES, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-C-1121—**William C. Griesbach**, *Judge*.

_____

ARGUED FEBRUARY 9, 2005—DECIDED MAY 18, 2005

_____

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge*. A fall left Christopher Opsteen with serious cognitive shortcomings. He applied for and received disability benefits under both the Social Security program and his employer's ERISA plan. Both applications asserted that he was totally and permanently disabled from performing his former job as a laborer in Keller's steel shop, or indeed any other gainful employment. Notwithstanding these successful applications, however, Opsteen asked Keller to put him back on the employment rolls. He acknowledged that his mental short-

comings made it risky (to himself as well as to others) to work in a place where huge hydraulic presses bend and move heavy iron and steel products. Laborers use oxyacetylene torches to cut and weld large pieces of metal; they must shape and move heavy building components. Opsteen cannot do all of his former tasks and could be injured in the bustle of the workplace. But he contended that two possible accommodations were available: first, he might be allowed an indefinite leave of absence; second, he might be supplied with a full-time "job coach" who would take precautions on his behalf.

The nature of the risks and the proposed accommodations raises a serious question whether Opsteen is "qualified" for the purpose of the Americans with Disabilities Act. See, e.g., *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002); *EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943 (7th Cir. 2001) (en banc); *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *Hansen v. Henderson*, 233 F.3d 521 (7th Cir. 2000); *Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599 (7th Cir. 1999). The ADA is not designed to preserve the seniority or fringe benefits of a person who can no longer work, just because recovery some years hence cannot be ruled out, and the extent to which it requires the appointment of assistants is open to doubt. But we need not pursue that subject, because we agree with the district judge's conclusion that the representations made to obtain Opsteen's disability benefits preclude him from contending that he can do the job now or in the foreseeable future.

Opsteen was (and remains) unable to fill out or understand the forms required to apply for disability benefits. Indeed, he testified at his deposition that he could not remember whether an application had been filed on his behalf and did not know that he was receiving disability benefits. Completing applications on Opsteen's behalf, his wife represented that he could no longer work. Medical evaluations submitted in support of the applications detailed Opsteen's limitations,

chiefly impaired memory and attentiveness. One physician wrote, for example, that Opsteen "[n]eeds supervision with all activities involving any possibility of injury due to cog-[nitive] deficits. . . . Likely never employable in competitive setting—sheltered work may become possible. . . . [He] has significantly impaired short and long term memory. Deficits in processing and integrating information. Currently any work would need to be 100% supervised. (He is *not* employable in the competitive market at this point.)" (Emphasis in original.)

*Cleveland v. Policy Management Systems, Inc.*, 526 U.S. 795 (1999), holds that receipt of Social Security disability benefits does not automatically disqualify a person from making a claim under the Americans with Disabilities Act. The Social Security system classifies many situations on a categorical basis, using presumptions ("listings") and rules (such as "the grids") that may result in awards of benefits to persons who are able to work (at least with a reasonable accommodation). A rough cut under the Social Security system thus may be compatible with a conclusion that a given person still can do a particular job. But the Court added that contradictions are unacceptable: a person who applied for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job then an ADA claim may be rejected without further inquiry. Contradictions between applications for ERISA benefits and ADA claims are no more acceptable, and analysis may be simpler because few ERISA plans have anything equivalent to the Social Security listings that extend benefits automatically to people with specified conditions, whether or not they can work. Keller's disability-benefits plan does not have such provisions.

In order to obtain long-term disability benefits under Keller's plan, Opsteen had to demonstrate that he could not do his former work *even with a reasonable accommodation*. His wife made that representation on his behalf, with

considerable medical support; the plan's administrator agreed and awarded benefits. In this court Opsteen acknowledges that his current position is factually inconsistent with the position maintained in his application for benefits, but he asserts that his mental condition is not that bad. At a deposition, the physician whose words we have quoted testified that he did not know why he penned this language and that he now views such a gloomy assessment as mistaken. This is exactly the sort of factual contradiction that *Cleveland* forbids. 526 U.S. at 806. Opsteen wants to have things two ways, depicting himself as mentally incompetent in order to obtain disability benefits but as mentally capable in order to secure employment. He has not informed the Social Security Administration of his new position, nor has he asked the SSA and the ERISA plan to stop paying benefits. Instead he seeks to maintain both gloomy and optimistic medical evaluations at the same time, and to benefit from different sources based on these incompatible positions. *Cleveland* holds that courts need not tolerate this maneuver. See also *Lee v. Salem*, 259 F.3d 667, 673-74 (7th Cir. 2001). Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later. See *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

We stated in *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000), that an employee's self-assessment of permanent disability is not preclusive if all professional views indicate that the condition is temporary. Employers may be required to accommodate short-term medical limitations, *Pals* holds, by permitting people to work reduced hours for a few weeks or months until recuperation is complete. The sort of representations that Opsteen provided to the SSA and the ERISA plan went beyond a layman's self-assessment. He supplied medical documentation of a serious, disabling, and permanent condition. His physician could not explain his about-face in this litigation. He did not suggest, for example, that Opsteen

suffered a variety of brain injury that sometimes appears more serious initially than it does a few years later. There is no medical rationale for the new position.

Keller could not accommodate a permanent disability with part-time employment for a few months, though it went beyond what *Pals* required by putting Opsteen on six months' leave to see whether improvement was likely, and not letting him go until it had medical opinions that he would remain totally disabled after that period. Nor could Keller be expected to let Opsteen work a few hours a day; part-time work is an accommodation suited to physical weakness, and hours lengthen as strength returns. Mental shortcomings would have made every hour on the job dangerous to Opsteen and his co-workers, so he has not suggested a part-time job as an option. *Pals* offers him no support.

AFFIRMED


A true Copy:

      Teste:


                    _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*