Sheryl P. BROADNAX,
Plaintiff–Appellee,

v.

CITY OF NEW HAVEN, Defendant–
Appellant.

No. 04–2196–CV.

United States Court of Appeals,
Second Circuit.

Argued: May 26, 2005.

Decided: July 20, 2005.

Norman A. Pattis, Esq., Williams & Pattis, New Haven, CT, Appearing for Plaintiff–Appellee.

Charles D. Ray, Esq., Robert J. Gallo, Esq. (on the brief), McCarter & English, LLP, Hartford, CT, Appearing for Defendant–Appellant.

Before: CALABRESI, KATZMANN, and B.D. PARKER, Circuit Judges.

KATZMANN, Circuit Judge.

This case requires us to determine (1) whether, when an employer seeks to benefit from the exception described in *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47 (2d Cir.1998), the burden is on the employer to establish that a Title VII plaintiff made no reasonable effort to find compara-

ble employment and (2) whether, when the defendant fails to object to jury consideration of lost wages under Title VII, the issue may be submitted to the jury for a non-advisory jury determination. The first question was, we believe, answered in the affirmative in *Greenway*. The second question, which has not previously been addressed in the Second Circuit, we also answer in the affirmative. In a summary order issued simultaneously with this opinion, we analyze several other issues raised by this appeal that present no novel questions of Second Circuit law. Because we rule in favor of Broadnax on all the issues that would entitle the City to relief, we affirm the judgment of the district court.

## BACKGROUND

The plaintiff, Sheryl P. Broadnax, a former member of the New Haven Fire Department ("the Department"), was terminated on February 25, 2002. However, the state labor board later reduced this termination to a six-month suspension without pay, and, in a union-filed appeal, the Connecticut Superior Court vacated the six-month suspension. Broadnax testified that although she understood the effect of the decisions by the state labor board and the Connecticut Superior Court was that she could return to work, she chose not to do so because she "couldn't take it anymore." Later, she testified that she was unemployed, and, when asked if she had any "plans about what to do next," she replied, "No, I don't, but I was waiting for the trial to be over and the date kept moving. So I kind of have been in limbo." She also testified that had she not been subjected to the treatment that she described, she would have continued as a member of the Department and pursued her goal of being Chief.

Broadnax's case went to trial on September 22, 2003. During closing argu-

ment, counsel for Broadnax asked the jury to grant her approximately $30,000 per year from the time of entry of judgment until Broadnax reaches retirement age. At no time did defense counsel contend that the court, and not the jury, should determine any lost wages award. The jury found in favor of Broadnax on her Title VII gender discrimination, hostile work environment, and retaliation claims; her Fourteenth Amendment equal protection claim; and her First Amendment free speech claim. The jury awarded Broadnax total damages of $1,446,772. This amount included $965,571 in lost wages.

On October 22, 2003, the City filed a motion for judgment as a matter of law under Rule 50(b), and in the alternative for a new trial under Rule 59(a). After the district court denied that motion by order entered on March 2, 2004, the City filed this appeal. As noted, this opinion addresses only two of the issues raised by this appeal: whether the lost wages award should be vacated because Broadnax did not demonstrate that she sought other employment, and whether the district court was permitted to submit the lost wages issue to the jury based on the City's failure to object to jury determination of the question. The remaining issues are addressed in the accompanying summary order.

### DISCUSSION

*I. Evidence of an Effort to Seek Other Employment*

The City argues that it is entitled to judgment as a matter of law under Rule 50 on the lost wages component of the jury's monetary award because Broadnax failed to use reasonable diligence in attempting to pursue other employment. "We review de novo the district court's denial of a motion for judgment as a matter of law."

*Olivier v. Robert L. Yeager Mental Health Ctr.,* 398 F.3d 183, 188 (2d Cir.2005).

Rule 50(a) permits a court "during a trial" and once "a party has been fully heard on an issue" to "grant a motion for judgment as a matter of law against that party." Fed.R.Civ.P. 50(a)(1). Rule 50(b) allows a party to make a motion for judgment as a matter of law after the jury has returned its verdict. That rule, however, only permits a party to "renew" an earlier "request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment." Fed.R.Civ.P. 50(b). The requirement that a post-trial motion for judgment as a matter of law be preceded by an earlier motion on the same subject is important because " '[t]he very purpose of Rule 50(b)'s requiring a prior motion for a directed verdict is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him [or her] from taking the case to the jury.' " *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1155 (2d Cir.1994) (quoting *Baskin v. Hawley,* 807 F.2d 1120, 1134 (2d Cir.1986)) (second alteration in original). "Thus, if an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice.' " *Id.* at 1155 (quoting *Baskin,* 807 F.2d at 1134). The City concedes that this argument was not raised in its Rule 50(a) motion before the verdict.

Generally, an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate. *Dailey v. Societe Generale,* 108 F.3d 451, 456 (2d Cir.1997). "This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." *Id. Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47 (2d Cir.

1998), however, establishes an exception to this general rule and holds that an employer "is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment." *Id.* at 54.

The City does not argue that it established that any suitable alternative work existed for Broadnax. Instead, relying on the exception carved out by *Greenway,* the City contends that it was entitled to judgment as a matter of law because Broadnax "offered absolutely no evidence of any effort on her part to seek alternative employment." By asserting that Broadnax's failure to offer evidence of a job search precludes a lost wages award, the City suggests that *Greenway* shifts to the plaintiff the burden of showing effort to obtain employment. The City is mistaken. Again, *Greenway* holds that "[a]n employer ... is released from the duty to establish the availability of comparable employment *if it can prove* that the employee made no reasonable efforts to seek such employment." *Id.* (emphasis added). Thus, the plain language of *Greenway* indicates that it is the employer, not the employee, who bears the burden on the issue of effort to seek employment. Indeed, *Greenway* makes clear that the exception it creates is merely an alternate evidentiary route by which a defendant can prove that the plaintiff did not fulfill the duty to mitigate, not a burden-shifting device. The decision states that the underlying rationale for the exception it creates "is that an employer should not be saddled by a requirement that *it* show other suitable employment in fact existed—the threat being that if it does not, the employee will be found to have mitigated his damages— when the employee, who is capable of finding replacement work, failed to pursue employment at all." *Id.* These passages es-

tablish that the *Greenway* exception is an exception to the necessity of evidence of alternative employment, not an exception to the general burden borne by the employer.

This outcome is consistent with the cases from other circuits on which *Greenway* relied. In *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515 (11th Cir.1991), the Eleventh Circuit observed that the defendant-employer "has the burden of showing that [the plaintiff] did not make reasonable efforts to obtain work." *Id.* at 1527, *cited in Greenway*, 143 F.3d at 54. Similarly, the Fifth Circuit in *Sellers v. Delgado College*, 902 F.2d 1189 (5th Cir.1990), stated that "if *an employer proves* that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Id.* at 1193 (emphasis added) (internal quotation marks omitted), *cited in Greenway*, 143 F.3d at 54.

In addition, our conclusion that *Greenway* does not disturb the employer's traditional burden in employment cases is consistent with how the law allocates the burden of establishing failure to mitigate damages in non-employment cases. Where a claimant has a duty to mitigate damages, the opposing party generally bears the burden of showing that the claimant did not take reasonable measures to do so. *See, e.g., Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 308 n. 9 (2d Cir.1987) (stating in an insurance dispute that "the burden of proving a failure to mitigate damages falls on the insurer"); *Jones v. Consol. Rail Corp.*, 800 F.2d 590, 593 (6th Cir.1986) (stating in a Federal Employee Liability Act case that "once it is established that a duty to mitigate is present, the burden nevertheless falls on the wrongdoer to show that the damages were lessened or might have

been lessened by the plaintiff"); *Hamilton v. McPherson*, 28 N.Y. 72, 77 (1863) (stating in a contract case that "[t]he burden of proving that the damages which have been sustained in such cases could have been prevented, unquestionably rests upon the party guilty of the breach of contract"); *Wallis v. Falken–Smith*, 136 A.D.2d 506, 523 N.Y.S.2d 827, 828 (N.Y.App.Div.1988) ("Even cases holding that the landlord does have a duty to mitigate also hold that the burden of proving that the landlord could have avoided or reduced the resulting damages falls on the tenant where the landlord has proven a prima facie case of default under the lease.") (internal citation omitted); *see also* E. Allan Farnsworth, *Farnsworth on Contracts* § 12.12 (2d ed. 2001) ("The burden of showing that the injured party could have, but has not, taken appropriate steps generally rests upon the party in breach, an allocation of the burden that has often worked to the advantage of employees.").

Nonetheless, the City contends that language in *Greenway* indicates that in that case, we shifted the burden to the plaintiff. Specifically, the City cites to *Greenway*'s observation that the plaintiff "made no showing that comparable compensation was *not* available," *Greenway*, 143 F.3d at 55 (emphasis added). The City misconstrues this passage. When this statement is read in context, it is clearly consistent with the employer's burden to show failure to seek alternative employment. Having concluded that the employer had in that case established that the plaintiff had failed to mitigate, *Greenway* vacated the lost wages award. *Id.* at 54. The plaintiff's failure to show that comparable compensation was available was only relevant to the court's consideration of whether, despite the plaintiff's failure to mitigate, he was nonetheless entitled to compensatory damages because the total compensation

he would have received from comparable employment would have been less than what he received from the defendant. *Id.* at 54–55. Thus, *Greenway* holds that once the employer meets its burden of showing failure to seek alternative employment, the burden shifts to the plaintiff to show that compensation for such employment is not comparable and thus the plaintiff is entitled to limited damages. *Id.* at 55. The important point for our purposes, however, is that the employer retains this initial burden of proof.

Thus, to the extent *Greenway* left any doubt about the issue, we hold that an employer, when arguing that a Title VII plaintiff failed to mitigate damages but seeking to avoid the requirement of showing that comparable employment is available, bears the burden on the issue of whether the plaintiff made no reasonable efforts to seek alternative employment.

█ With this in mind, we turn to whether the district court erred in not granting the City judgment as a matter of law on the mitigation issue. Judgment as a matter of law on an issue as to which the movant bears the burden of proof is "rare." *Granite Computer Leasing Corp. v. Travelers Indem. Co.,* 894 F.2d 547, 551 (2d Cir.1990). "A verdict should be directed in such instances only if the evidence in favor of the movant is so overwhelming that the jury could rationally reach no other result." *Id.; see also Fairbrother v. Morrison,* 412 F.3d 39, 53 (2d Cir.2005); *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 109 (2d Cir.2001).

█ The City introduced no evidence at trial bearing on whether Broadnax failed to seek alternative employment. In response to a question posed by her own attorney, Broadnax stated that she was unemployed. She then gave the following answer:

Q. And do you have plans about what to do next?

A. No, I don't, but I was waiting for the trial to be over and the date kept moving. So I kind of have been in limbo.

Contrary to the City's assertions, neither of these answers bears on whether, and to what extent, Broadnax sought other employment. Her statement that she was unemployed could mean either that she had not sought other employment, or she tried and failed—indeed, that an unsuccessful job hunt was ongoing. In addition, Broadnax's statement that at the time of the trial, she did not have plans about what to do next does not permit any reasonable inferences about the extent of her efforts to find a job. An as-yet unsuccessful job search might have taken place before trial and might even have been ongoing during the trial, *and* Broadnax could have been waiting to make unspecified "plans about what to do next" until after the trial concluded. The City's statement that based on these two items of testimony, "[i]t is clear ... that [Broadnax] made a conscious decision *not* to seek other employment," is simply mistaken. Moreover, the City fails to cite any evidence beyond this testimony suggesting that Broadnax failed to pursue other employment.

In light of this, we conclude that the City failed to meet its burden of showing that Broadnax made no reasonable efforts to seek alternative employment. Consequently, it does not constitute " 'manifest injustice,' " *Cruz,* 34 F.3d at 1155 (quoting *Baskin,* 807 F.2d at 1134), to decline to grant the City judgment as a matter of law on this issue; nor did the district court abuse its discretion in refusing to grant the City a new trial on this issue.

## II. Jury Determination of Lost Wages

█ We must also consider whether the district court erred in submitting to

the jury both the appropriateness of granting an award of lost wages, and the amount of the lost wages award. Because a lost wages award—whether in the form of back pay or front pay—is an equitable remedy, a party is generally not *entitled* to a jury determination on the question. *See Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 157 (2d Cir.2001) ("Because back pay and front pay have historically been recognized as equitable relief under Title VII, neither party was entitled to a jury trial ...."). [1] However, this circuit has not previously considered whether, where one party requests a jury trial on the lost wages issue and the party's opponents fail to object, the court is permitted, because the opponents may be deemed to have consented, to submit the issue for a non-advisory jury determination.

Other circuits that have considered this question have answered in the affirmative. In *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir.2000), neither party objected to having the jury determine either back pay or front pay, and the jury returned an award of compensatory damages that included an award for lost wages. *Id.* at 499, 501. After concluding that the plaintiff was not entitled to a jury determination on the lost wages issue, *id.* at 500–01, the court stated that it did not

necessarily follow that such a determination was "*forbidden,*" *id.* at 501 (emphasis in original). The court cited Rule 39 of the Federal Rules of Civil Procedure, which states that even in "actions not triable of right by a jury," a court, "with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." Fed.R.Civ.P. 39(c). [2] Although noting back pay and front pay under section 706(g) of the Civil Rights Act are "equitable" matters, the court observed that "[j]uries routinely determine lost wages and discount future income loss to present value," and that "[i]f hundreds of juries render verdicts on these subjects every day across the country, they can't be beyond the scope of consent under Rule 39(c)." *Id.* at 501. Turning to the facts of the case before it, the court observed that although the parties had not given their consent to a jury wage determination explicitly, they also did not object. *Id.* The court noted that "'[i]f one party demands a jury, the other parties do not object, and the court orders trial to a jury, this will be regarded as jury trial by consent' under Rule 39(c)." *Id.* (quoting 9 *Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure* § 2333 (2d ed.2005)). On this basis,

---

1. Some of our cases, in dicta concerning the Age Discrimination in Employment Act, could be taken as suggesting that back pay is a jury question and that front pay, in contradistinction, is equitable and, hence, a question for the court. *See, e.g., Banks v. Travelers Cos.*, 180 F.3d 358, 364 (2d Cir.1999). As the Seventh Circuit has said, however, it is manifest that, under section 706(g) of the Civil Rights Act, both front pay and back pay are equitable remedies. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499–500 (7th Cir.2000); *see also* 42 U.S.C. § 2000e–5(g); 42 U.S.C. § 1981a(b)(2).

2. Rule 39(c) distinguishes between an advisory jury determination, for which the parties' consent is unnecessary, and a non-advisory

jury determination, for which the parties' consent is required. A non-advisory jury determination has the same effect as if a jury trial right existed. The full rule states:

> Advisory Jury and Trial by Consent. In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, except in actions against the United States when a statute of the United States provides for trial without a jury, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Fed.R.Civ.P. 39(c).

the court determined that "mutual implied consent supports the jury's authority to resolve issues that normally would be decided by the court," and affirmed the judgment. *Id.*

The Fifth Circuit has come to a similar conclusion. In *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980), the district court had submitted the plaintiff's request for equitable relief under section 706 to the jury, without objection from either side. *Id.* at 123. The jury returned a verdict in favor of the plaintiff for, *inter alia,* unpaid salary with interest—that is, back pay. *Id.* at 120 & n. 2. Invoking Rule 39(c), the circuit court held that "[b]y failing to object, the parties agreed that the jury's verdict on the claims for equitable relief was to have the same effect as if a right to a jury trial existed." *Id.* at 123; *see also Bereda v. Pickering Creek Indus. Park, Inc.,* 865 F.2d 49, 52 (3d Cir.1989) (holding that where both parties had requested a jury trial on Title VII and other claims "and the subject of an advisory jury was never mentioned at any time during the proceedings, [the plaintiff] and [the defendant] must be deemed to have consented to a trial by a nonadvisory jury under Rule 39(c)"); *Hildebrand v. Bd. of Trs. of Mich. State Univ.,* 607 F.2d 705, 710–11 (6th Cir.1979) (stating in dictum that where both sides agreed to submit a question to the jury, even if no entitlement to jury determination existed, the district court had abused its discretion in treating the jury's finding as merely advisory).

We find the reasoning of our sister circuits persuasive. In particular, we agree with the Seventh Circuit that having juries calculate lost wages requires no special competence or authority belonging solely to the court. *See Pals,* 220 F.3d at 501. Indeed, this conclusion is borne out by the frequency with which juries are permitted to calculate lost wages in other areas of the law. *See, e.g., Vasina v. Grumman Corp.,* 644 F.2d 112, 119 (2d Cir.1981) (affirming jury's calculation of lost wages in tort case); *Johnson v. Manhattan & Bronx Surface Transit Operating Auth.,* 71 N.Y.2d 198, 203–06, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988) (same); *Horstmann v. Nicholas J. Grasso, P.C.,* 210 A.D.2d 671, 619 N.Y.S.2d 848, 849–50 (N.Y.App. Div.1994) (affirming jury calculation of lost wages in breach of contract case); *Wendell v. Supermarkets Gen. Corp.,* 189 A.D.2d 1063, 1063, 592 N.Y.S.2d 895 (N.Y.App.Div. 1993) (holding in a tort case that the jury's lost wages award was "not against the weight of the evidence," but reversing on other grounds). In addition, we find sensible the proposition that where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence may be deemed "consent" under Rule 39(c). Consequently, we hold that when a party demands jury consideration of lost wages under Title VII and the party's opponent fails to object, Rule 39(c) permits the district court to submit the lost wages issue for a non-advisory jury determination.

Here, the City failed to object to sending the lost wages issue to the jury, despite Broadnax's including in her Complaint the statement that "[t]he plaintiff claims trial by jury of the issues in this case." Consequently, it was not reversible error for the district court to submit to the jury the non-advisory determination of whether Broadnax was entitled to an award of back pay, front pay, or both, and if so, an appropriate award of lost wages.

## Conclusion

For the foregoing reasons, and for the reasons stated in the accompanying sum-

mary order, the judgment of the district court is AFFIRMED.