OPINION
AMBRO, Circuit Judge.
Jamie C. Bisker, who suffers from multiple sclerosis (“MS”), brought an action against her employer, GGS Information Systems, Inc. (“GGS”), in the Western District of Pennsylvania, alleging a failure to accommodate her disability in violation of both the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 1201 et seq., and the Pennsylvania Human Relations Act (“PHRA”), 43 P.S. § 951, et seq. The District Court granted summary judgment to GGS, holding that, due to the representations Bisker had made about her condition in her multiple applications for disability benefits, she was “barred by judicial estoppel from pursuing her ADA and PHRA claims.” Bisker v. GGS Info. Servs., Inc., No. 1-CV-07-1465, 2008 WL 4372927, at *3 (M.D.Pa. Sept. 22, 2008). Because we do not believe that judicial estoppel applies in this case, we vacate the District Court’s order and remand so that the merits of Bisker’s failure-to-accommodate claims may be squarely addressed.
I.
Since we write solely for the parties, we recite only those facts necessary to our disposition. In 1999, Bisker began working at GGS, a York, Pennsylvania company that specializes in making parts catalogues. As of 2006, she was working as a “Parts Lister,” a job that involved reviewing “engineering information,” and, with the aid of a computer, producing technical illustrations of the various parts. In April of that year, Bisker requested and received leave from work under the Family Medical Leave Act. Bisker’s application for leave included a certification from her physician, Dr. Aex Rae-Grant, which described her as “currently unable to work due to multiple sclerosis symptoms[,] including weakness, fatigue, pain [and] stiffness.” That same month, Bisker applied for and received private short-term disability benefits through GGS.
In May 2006, Bisker met with some of her supervisors to discuss being allowed to work from home to accommodate her disability. *793 [1] No final decision was made at that meeting, although (according to Bisker’s deposition) she was repeatedly encouraged to apply for Social Security Disability Insurance (“SSDI”) in lieu of attempting to resume work in some capacity.[2] While Bisker waited on a final answer about working from home, she made additional requests for private disability benefits. In July 2006, she submitted an application to extend her short-term disability benefits. In Dr. Rae-Grant’s accompanying certification, he noted that, while Bisker was hopeful that she would eventually be able to return to work, she “continues to complain of multiple symptoms[,] including overwhelming fatigue, weakness and stiffness in the legs, difficulty concentrating, pain and paresthesias of legs.” That same month, Bisker successfully applied for private long-term disability benefits. In her application, Bisker contended that her condition “[v]aries [from] day to day,” that she had not attempted to resume any work since leaving her job, and that she does not “know” whether she will return to her “last occupation.”
On July 21, 2006, Mark Oberdick, GGS’ Human Resources Director, wrote to Dr. Rae-Grant, inquiring whether, “[biased on [Bisker’s] condition, ... she can perform the essential functions of her job at home as described in her job description and Physical Demands Analysis Worksheet.” In addition, Oberdick’s letter claimed that Bisker’s “job has changed since April,” and that, “[a]s a result, the daily demands to meet certain deadlines in [Bisker’s] Parts Lister position with the 8-hour workday have significantly increased.” On August 8, 2006, Dr. Rae-Grant responded, contending that Bisker “is physically unable to perform the essential function of her job as described in her physical demands analysis worksheet,” but that she would likely be able to do her job if allowed to work from home and given seven days to complete 40 hours of work. Ober-dick then sent a letter to Bisker (dated August 15, 2006) formally denying her request for an accommodation. In the letter, Oberdick contended that changes in the Parts Lister position — in particular, the shifting of its focus away from performing the technical illustrations on site and toward overseeing illustration work being done in India — made it impossible to perform the job offsite and outside the confines of the normal five-day workweek.
Shortly after receiving Oberdick’s letter rejecting her accommodation request, Bisker put in an application with the Social Security Administration (“SSA”) for SSDI benefits. In her application, she stated that she “became unable to work because of [her] disabling condition on April 18, 2006,” and described herself as “still disabled.” In response to the question, “How do your illnesses, injuries, or conditions limit your ability to work?,” she wrote:
I’m required to sit at a computer 8 hours a day. I requested accommodation to work at home, was denied. I need to be able to move around when my legs/arms go numb/stiff. If I have a muscle spasm, I need to be able to take *794 muscle relaxers/pain pills and use a mas-sager. When I [take] pills at work and try to keep working, they affect my performance. I get fatigued to the point that I need to lay down and take a nap.
In September 2006, Bisker supplemented her SSDI application. In response to a question about whether pain affects her “ability to think and concentrate,” she wrote that “I can’t concentrate while having a spasm and dealing with the pain it causes.” In response to a question about whether her medication was causing her any side effects, she wrote that it “[p]uts me in la-la land.” In October 2006, the SSA rejected Bisker’s claim for benefits. On November 13, 2006, Bisker appealed the denial. In her appeal submission, she wrote that “because I am not sure day to day how bad my disability is ... [,] I am unable to work,” and indicated that she had “no additional evidence to submit.” In July 2007, her SSDI benefits request was granted.
In August 2007, Bisker brought the action that is the subject of this appeal. Following extensive discovery, both parties moved for summary judgment. In September 2008, the District Court granted summary judgment to GGS based on judicial estoppel. Bisker, 2008 WL 4372927, at *3. Bisker timely appealed.[3]
II.
To prevail on her ADA claim, Bisker must show, inter alia, that “[s]he is ... qualified to perform the essential functions of the job, with or without reasonable accommodations.”[4] Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir.1999). The District Court concluded that, having obtained SSDI benefits on the basis of her assertion that she was “unable to work because of [her] disabling condition,” Bisker could not then turn around and claim to be able to work for ADA purposes. Bisker, 2008 WL 4372927, at *3. More specifically, the Court, applying Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), held that Bisker’s failure “to offer sufficient explanations for the inconsistencies” between what she asserted in her disability benefits applications and what she must assert in order to prevail in her ADA suit barred her from pursuing her ADA claim. Bisker, 2008 WL 4372927, at *3.
We disagree. It is true that, under Cleveland, an ADA plaintiff must account for any inconsistencies between representations made in an SSDI application and the elements necessary to prevail on the ADA claim or else face judicial estoppel. See Cleveland, 526 U.S. at 807, 119 S.Ct. 1597. Here, however, there was no contradiction that needed to be explained away in the first place. Cleveland makes clear that there is no necessary inconsistency in simultaneously representing oneself as unable to work for SSDI purposes yet able to work for ADA purposes. See id. at 797-98, 802-03, 119 S.Ct. 1597. That is because “when the SSA determines whether an individual is disabled for SSDI purposes it does not take *795 the possibility of ‘reasonable accommodation’ into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.” Id. at 808, 119 S.Ct. 1597 (emphasis in original).
Thus, Bisker’s general assertion (in her SSDI submissions) that she is unable to work due to her disability did not commit her to any position as to whether she could work if reasonably accommodated. See Turner v. Hershey Chocolate USA, 440 F.3d 604, 609-10 (3d Cir.2006). In fact, Bisker specifically qualified her assertion of disability by mentioning (in her initial SSDI submission, at least) that she had been denied a prior request to work from home. The District Court was therefore incorrect to treat Bisker’s general claims about being too disabled to work as affecting her subsequent ability to bring an ADA claim.
The proper focus of the judicial estoppel analysis is not on Bisker’s general contention that she is unable to work, but rather on the specific factual representations she made in support of that contention. See Opsteen v. Keller Structures, Inc., 408 F.3d 390, 392 (7th Cir.2005) (“[A] person who applied for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job[,] then an ADA claim may be rejected without further inquiry.”); Motley v. New Jersey State Police, 196 F.3d 160, 167 (3d Cir.1999) (same). But the picture Bisker painted of her condition in her SSDI submissions is not any different from the one she painted in her accommodation request. In those SSDI submissions, Bisker stated that she is not “sure day to day how bad [her] disability is,” and that, when she is having bad days, she finds herself too fatigued or too affected by her pain medication to concentrate on her work. That is consistent with how she depicted her condition for accommodation purposes — namely, as one that prevents her from working on a regular schedule, but would allow her to put in 40 hours a week if she were given seven days to do so. Nothing changes if the focus is shifted from her SSDI submissions to her applications for private disability benefits,[5] as, in those applications, Bisker similarly stated that her condition “Maries [from] day to day,” and that it often causes her weakness, fatigue and pain.
In sum, because Bisker did not assert anything in her disability benefits applications that is inconsistent with what she asserted in her ADA accommodation request, judicial estoppel does not come into play. Her case turns simply on whether that accommodation request, which GGS denied, was reasonable. The District Court did not reach that issue and we decline to do so in the first instance on appeal. Accordingly, we vacate the District Court’s grant of summary judgment based on judicial estoppel and remand for further proceedings consistent with this opinion.

. Prior to her first accommodation request, one of Bisker’s supervisors, Patrick Carlton, had conducted a "feasibility test” to determine whether Bisker’s work could be completed from a remote location. Carlton concluded that it would neither be difficult nor costly to set up a computer in Bisker's home in such a way that it would replicate her computer at work.

. The parties dispute how seriously GGS took Bisker’s request for an accommodation. As we are not reaching the merits of Bisker's failure-to-accommodate claim, we do not recite all the facts relevant to that dispute.

. The District Court had jurisdiction over Bisker’s ADA claim under 28 U.S.C. § 1331 and jurisdiction over her PHRA claim under 28 U.S.C. § 1367. We have jurisdiction over the District Court’s grant of summary judgment on both claims under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. See Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 416 (3d Cir.2008).

. Bisker’s PHRA claim is analyzed under the same framework as her ADA claim. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir.1999). For ease of reference, we hereafter refer exclusively to her ADA claim.

. Although Cleveland dealt specifically with the effect of an ADA plaintiff's prior representations in an application for SSDI benefits, courts have generally held that the Cleveland analysis applies to submissions for private disability benefits as well. See Turner, 440 F.3d at 607; Opsteen, 408 F.3d at 390; Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 258-59 (5th Cir.2001).