In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3856

PATRICK L. BUTLER,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF ROUND LAKE POLICE DEPARTMENT,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3366—**Charles P. Kocoras,** *Judge.*

ARGUED SEPTEMBER 17, 2009—DECIDED OCTOBER 27, 2009

Before POSNER, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Patrick Butler, who began working as a police officer in the little village of Round Lake (Illinois) in 1997, appeals from a grant of summary judgment dismissing the case he brought against the village in 2006 under the Americans With Disabilities Act (ADA). The basis for the dismissal was judicial estoppel. We begin with the facts.

The village of Round Lake, a short drive south from Lake Geneva, Wisconsin, is home to around 8,000 people. Butler joined its police force in 1997 and was promoted to sergeant in 2002. As a sergeant, he performed regular patrol activities and supervised officers on duty. He was also in charge of field training for new officers. Butler worked the night shift for six of his seven years of service on the force.

In late 2003, Butler's health took a turn for the worse. He had breathing problems when walking up a flight of stairs or jogging 50 feet. He wrote to Charles Foy, the village police chief, with concerns about his "rapidly deteriorating" health, citing his blood pressure, night blindness, and feelings of fatigue and illness. He wanted to know what the department planned to do with his hours as he was considering whether or not to buy a Snap-On franchise.[1] The Snap-On opportunity passed him by, however, and he continued working for Round Lake. From January 2004 on, Butler repeatedly requested the day shift from his supervisors and Chief Foy, but the department wanted a sergeant on each shift, and other sergeants were assigned to days.

By May 2004, Butler was struggling; he couldn't even walk 50 feet at a time, and it hurt simply to breathe. At that time he was diagnosed with COPD (chronic obstructive pulmonary disease, an incurable lung condition that

---

[1] Based in Kenosha, Wisconsin, it was ranked as the number one tool franchise in 2009 by Entrepreneur Magazine. http://www.snapon.com (last visited October 5, 2009).

makes breathing very difficult) by Dr. Min Lin, who had been treating him for related symptoms since 1995.[2] Butler never returned to work after the diagnosis. In June, Dr. Lin, who was Butler's personal physician, informed the department that Butler could return to "light duty, no running, no fighting, until further notice," but the department responded that no light duty was available. At that time, Round Lake employed 24 to 26 police officers, including four sergeants with Butler being second in seniority. Typically, light duty was only assigned to officers with temporary job-related injuries. Chief Foy asked Butler to book an appointment with Dr. Peter Allegretti as Dr. Lin hadn't provided a full release. Dr. Allegretti reported that Butler could return to work but with the permanent restriction of day shifts only due to his lung disease. In response, Chief Foy wrote to Butler that he could not return to work until he had clearance to work *any* shift assigned by the department. A couple of days later, Butler filed an application for a disability pension.

To adjudicate his request, the Round Lake Police Pension Board held a hearing where Butler testified that his duties as sergeant included "patrol," which involved

---

[2] COPD is the fourth-leading cause of death in the United States. It's a disease which gets worse over time. Severe COPD may prevent a person from doing even basic activities like walking. COPD has no cure, and doctors don't know how to reverse the damage it does to airways and lungs. http://www.nhlbi.nih.gov/health/dci/Diseases/Copd/Copd_WhatIs.html (last visited October 5, 2009).

all the typical activities of a police officer. He said his pulmonary condition made it impossible to do the required duties, such as chasing a suspect or wrestling with an unruly one. Butler supported his application with certificates of disability from three physicians, including Dr. Allegretti, who noted that Butler is "permanently disabled from police service, but may perform duties on a restricted physical basis as follows: No rotating shifts, no strenuous activity, no wrestling, no fighting, no running, no constant walking greater than 4 blocks, no carrying more then [sic] 20 lbs. May do sit down job." After Butler presented his testimony and disability certificates, the pension board found that he qualified as disabled and awarded him benefits. While continuing to collect his pension, Butler filed this lawsuit.

To succeed on an ADA claim, a plaintiff must show that, "with or without reasonable accommodation," he can "perform the essential functions" of his job. 42 U.S.C. § 12111(8). But accepting Butler's sworn testimony before the pension board as true, we cannot see how he could perform essential police functions—with or without accommodations. We agree with the district court that under the principle of judicial estoppel, Butler's claim must fail.

Judicial estoppel provides that a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a subsequent one. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999). It is an equitable concept designed to protect the integrity of the judicial process and "to prevent liti-

gants from 'playing fast and loose with the courts.' " *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (citing *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Its purpose is to prevent a litigant from prevailing "twice on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). In order to secure disability benefits, Butler said he was unable to perform basic police duties. Now, in order to claim damages, he says he *is*, or at least *was*, able to perform those duties. This is just the kind of about-face judicial estoppel seeks to prevent.

As an initial matter, Butler argues that Round Lake placed him in a "Catch-22 position" by mandating that he obtain a disability pension, which would then preclude him from claiming damages under the ADA. However, while Round Lake officials encouraged Butler to apply for a pension if he could not return to work, there is no evidence that they forced him to do so. Hence, there was no catch. Butler could have chosen to sue before getting a pension, but clearly the village was not going to encourage him to do that.

Claiming disability benefits and asserting ADA claims are not *always* mutually exclusive, but a "plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). To be sufficient, an explanation must "warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the

plaintiff could nonetheless 'perform the essential functions' of her job, with, or without 'reasonable accommodation.' " *Id*. at 807. Even viewing the record in the light most favorable to Butler, as we must, he has provided no satisfactory explanation for his inconsistency.

*Cleveland* and much of its progeny deal with Social Security Disability claims, whereas this case involves Illinois police pension benefits. However, the principles are pretty much the same. If anything, the estoppel principle applies more readily here because the pension board procedure governed by the Illinois Pension Code has nothing "equivalent to the Social Security listings that extend benefits automatically to people with specified conditions, whether or not they can work." *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390, 392 (7th Cir. 2005) (contradictions between applications for ERISA benefits and ADA claims are no more acceptable than those between SSDI applications and ADA claims). Instead of automatic grants, the Round Lake Police Pension Board makes an individualized inquiry to determine whether the officer is disabled.

Butler claims that his earlier statement—the one at the pension hearing—is consistent with his ADA claim because it refers to then-current abilities as opposed to earlier time frames when he was supposedly able to perform his job. We have held that the passage of time and a concurrent change in a disability can explain an inconsistency between SSDI and ADA status. *Feldman v. American Mem'l Life Ins. Co.*, 196 F.3d 783, 791 (7th Cir. 1999). However, Butler fails to offer any evidence that he could have performed the essential functions of police

work during those earlier time frames, with or without accommodations. Butler complained of difficulty breathing from the fall of 2003 on, and by the time he stopped reporting to work at the end of May 2004—nearly a year before the pension board hearing—COPD affected him so badly that he could barely walk a few blocks or climb stairs. While Round Lake may not be a hotbed of criminal activity, it would be foolish to put an officer on duty who cannot walk more than four blocks at a time or handle a suspect resisting arrest. There is simply no genuine issue of material fact here to decide.

The same is true of Butler's reasonable accommodation argument. Butler believes his pension and ADA claims can coexist because the pension board did not consider whether reasonable accommodation would have allowed him to continue working. It is true accommodations were not discussed, and the Court in *Cleveland* found that crucial to the plaintiff's claim. But here, no accommodation would have sufficed. Simply switching to the day shift would not have changed the fact that—as Butler testified—he could not perform the duties of a Round Lake police officer.

Butler now tries to tell us that the duties he talked about in the hearing weren't actually the duties required of him. He thinks the inconsistency between his pension hearing testimony and his ADA claim can be explained because, as he puts it, "at issue in the pension hearing were job functions that were not actually included in the job description." We cannot believe, however, that the Round Lake Police Pension Board would grant disability benefits based on whether Butler could perform duties

he was not even required to do. In the same vein, Butler maintains that running and fighting are not part of police policy and are not "essential functions" for purposes of the ADA. He makes a lot of noise about whether the duties of a "street cop" or "command officer" could differ from those of a "police officer," "sergeant," or "patrol officer" as these terms have been used interchangeably at times during the pension and litigation processes. But according to the department's job description, a sergeant's duties include "Field Patrol Activities," such as "taking direct action against crime and traffic problems." And apart from any policy, the idea that a police officer need not be able to run or climb a flight of stairs without getting severely winded is a bit hard to swallow.

When it comes down to it, quibbling about what it means to be a "street cop" versus a "police officer" versus a "sergeant" distracts from the central point. As we have said, "a person who applied for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job then an ADA claim may be rejected without further inquiry." *Opsteen*, 408 F.3d at 392. Round Lake needs police officers that can protect the community, and Butler proved that he could not meet those expectations in order to get his pension. He cannot turn around and say, "But I really can!" for purposes of this lawsuit.

Accordingly, we AFFIRM the district court's grant of summary judgment.